UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-589-BR

| TAMER ESCANDER, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) ORDER |
| CHRISTINE WORMUTH,[1] | ) |
| Defendant. | ) |

This matter is before the court on defendant's renewed motion to dismiss, (DE # 23), and plaintiff's motion to amend his complaint, (DE # 36).

## I. BACKGROUND

In December 2019, plaintiff filed this action in the District Court for the District of Columbia alleging claims of employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., against the Secretary of the Army (the "Army"). (Compl., DE # 1, ¶¶ 55-60.) The court transferred the case to this court. (9/16/20 Order, DE # 13.) Two months later, this court received the case and, because briefing was not complete, denied without prejudice the Army's initial motion to dismiss. (11/9/20 Order, DE # 17.)

In December 2020, the Army renewed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE # 23.) Plaintiff filed a motion to strike three exhibits the Army filed in support of the motion. (DE # 30.) Rather than strike the exhibits from the record, the

---

[1] The court substitutes as the appropriate defendant the current Secretary of the Army, and the Clerk is DIRECTED to change the case caption on the docket accordingly. See Fed. R. Civ. P. 25(d).

court concluded it would not consider the exhibits—Exhibits 1, 3, and page 4 of Exhibit 2—when ruling on the motion to dismiss. (4/7/21 Order, DE # 33, at 4.) Plaintiff then filed his response to the motion to dismiss, (DE # 37), and moved to amend his complaint, (DE # 36). The Army filed a reply in support of its motion to dismiss, (DE # 40), and a response in opposition to plaintiff's motion to amend, (DE # 41).

## II. DISCUSSION

The Army opposes plaintiff's motion to amend as futile, contending the proposed amendments do not cure the pleading deficiencies it raised in the motion to dismiss. (Resp., DE # 41, at 4.) It therefore requests that if the court allows the motion to amend, plaintiff's claims be dismissed for the reasons stated in the motion to dismiss. (Id.) Because "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), it will allow plaintiff's motion to amend and consider the motion to dismiss as to plaintiff's proposed first amended complaint, (DE # 36-2).

In evaluating whether a claim has been stated under Rule 12(b)(6), "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

> Ultimately, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Facial plausibility is established once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims across the line from conceivable to

plausible.

> Satisfying this "context-specific" test does not require detailed factual allegations. The complaint must, however, plead sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. Without such heft, the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are merely consistent with a defendant's liability, fail to nudge claims across the line from conceivable to plausible.

Id. at 255-56 (citations omitted).

First, the Army argues this action should be dismissed for plaintiff's failure to timely exhaust his administrative remedies. (Mem., DE # 24, at 8-10.)

> Title VII prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. These substantive protections are applicable to the actions of federal [military departments], such as the Department of [the Army], as well as to the actions of private entities. *See id.* § 2000e-16(a).
> A federal employee alleging a violation of Title VII must first raise the issue within his agency. Initially, the aggrieved employee must consult with an [equal employment opportunity ("EEO")] counselor in the employee's federal agency within 45 days of the allegedly discriminatory act. 29 C.F.R. § 1614.105(a).

Nielsen v. Hagel, 666 F. App'x 225, 227 (4th Cir. 2016). This time limitation is "subject to waiver, estoppel and equitable tolling." 29 C.F.R. § 1614.604(c).

According to plaintiff, in July 2014, he was informed that the Army had suspended him from Fort Bragg, where he had previously worked as an Arabic language instructor. (See First Am. Compl., DE # 36-2, ¶¶ 5, 36-39.) That same month, plaintiff "attempted to request EEO counseling with the Fort Bragg EEO office . . . but was informed that he could not do so because he was not a federal employee." (Id. ¶ 39; see also Def.'s Ex. 2, DE # 25-2, at 1 (EEO counselor's November 2014 report providing that the reason for plaintiff's delayed contact, i.e., beyond the 45-day period, was "'[plaintiff] contacted the Garrison EEO office the 2nd Week in July 2014, and was told that he could not file a complaint'").) "After learning that he had been

3

misinformed, [plaintiff] again sought EEO counseling from the Army on 14 October 2014, with the assistance of the Equal Employment Opportunity Commission ("EEOC") Raleigh, NC regional office," and filed a formal complaint with the Army in November 2014. (First Am. Compl., DE # 36-2, ¶ 39.) Plaintiff acknowledges that he did not timely engage in the EEO counseling process, but he argues the Army should be equitably estopped from asserting untimeliness. (See Resp., DE # 37, at 3-4.)

> Equitable exceptions to the statutory limitations period should be sparingly applied . . . .
> The doctrines of equitable tolling and equitable estoppel have a common origin; they are based primarily on the view that a defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time. . . .
> Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action. To invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge.
> Equitable estoppel applies where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline. "The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge."

English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987) (citations omitted).

Here, plaintiff allegedly contacted the Army's EEOC representative at Fort Bragg *within* the 45-day period. Yet, at that time, the representative prevented him from engaging in counseling, concluding he was not a federal employee—a conclusion which plaintiff contends is inaccurate. At this stage of the proceedings, the court finds plaintiff has sufficiently alleged facts which might warrant the application of equitable tolling, and the court will not dismiss the amended complaint on this basis. See Bruner v. The Planning and Zoning Res. Corp., No. CIV-

4

07-1018-HE, 2008 WL 11422142, at *2 (W.D. Ok. Feb. 13, 2008) (finding the plaintiff's motion to amend her complaint to add a potentially untimely Title VII discrimination claim was not futile where the plaintiff alleged the EEOC investigator repeatedly informed her he was going to amend her charge to include that claim but failed to do so).

Second, the Army argues plaintiff's claims should be dismissed because he has not pled that he was an employee, or an applicant seeking employment, of the Army.

> To bring a successful Title VII claim against the United States, a Plaintiff must demonstrate the existence of a required employment relationship. *See* 42 U.S.C.A. § 2000e–16(a); 29 C.F.R. § 1614.103(c). Section 2000e–16(a) provides that "the threshold requirement for imposing Title VII liability against the federal government is that Plaintiff be an employee, or applicant for employment, of the Defendant federal agency." *See also King v. Dalton*, 895 F. Supp. 831, 836 (E.D. Va. 1995). Further, "Title VII protects workers who are 'employees,' but does not protect independent contractors." *Kahn v. American Heritage Life Ins. Co.*, 324 F. Supp. 2d 652, 655 (E.D. Pa. 2004) (citations omitted); *see also Metro. Pilots Ass'n, L.L.C. v. Schlosberg*, 151 F. Supp. 2d 511 (D.N.J. 2001).

Eghbali v. Dep't of Energy at Savannah River Nat. Lab, 90 F. Supp. 3d 587, 591-92 (D.S.C.), aff'd, 623 F. App'x 115 (4th Cir. 2015). "[M]ultiple entities may simultaneously be considered employers for the purposes of Title VII." Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 410 (4th Cir. 2015).

> In determining whether two entities are joint employers, this Court considers the following factors:
> (1) authority to hire and fire the individual;
> (2) day-to-day supervision of the individual, including employee discipline;
> (3) whether the putative employer furnishes the equipment used and the place of work;
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
> (5) the length of time during which the individual has worked for the putative employer;
> (6) whether the putative employer provides the individual with formal or informal training;

5

> (7) whether the individual's duties are akin to a regular employee's duties;
> (8) whether the individual is assigned solely to the putative employer; and
> (9) whether the individual and putative employer intended to enter into an employment relationship.

Smith v. CSRA, ___ F.3d ___, No. 20-1377, 2021 WL 3889282, at *11 (4th Cir. Sept. 1, 2021) (quoting Butler, 793 F.3d at 414).

Between 2011 and 2014 and for one day in 2015, several staffing firms employed plaintiff pursuant to task orders under a "multi-award contract" with USAJFK Special Warfare Center and School ("SWCS") at Fort Bragg. (First Am. Compl., DE # 36-2, ¶¶ 5, 8.)

> During this time, the Army had effective control of [plaintiff's] hiring and firing, directing each staffing firm to place him or not place him on contracts. The Army also controlled his work hours and work environment, including control of the classroom in which he worked. The Army also effectively controlled his evaluation and discipline, best exemplified by the fact that the only criticism he received from his Multi-Lingual Solutions ("MLS") supervisor in 2014 was at the direction of [Dr. Amir] Nabipour[, the Department head,] and Manuel Echevarria—the head of the SWCS Language Learning Quality Assurance ("QA") program. Lastly, [plaintiff] was only ever assigned to work on SWCS contracts during this time.

(Id. ¶ 9.) More specifically, Dr. Nabipour would "tell staffing firms that he did not want a particular instructor teaching a class, and [] staffing firms would comply with his wishes." (Id. ¶ 34.) He informed the contract instructors that he could fire them. (Id. ¶ 35.) In fact, plaintiff claims Dr. Nabipour was the person responsible for his banning from Fort Bragg and inability to work on subsequent task orders. (See id. ¶¶ 30, 56-57.) Plaintiff argues he has sufficiently alleged he was in a joint employment relationship with the Army. (See Resp., DE # 37, at 6, 9.)

In response, the Army contends even assuming plaintiff has sufficiently pled the Army jointly employed him, that relationship ended on 2 May 2014 when MLS's task order ended.

6

(Reply, DE # 40, at 6.) By the time plaintiff learned of his banning from Fort Bragg in July 2014, another staffing firm, SSI, had been awarded the next task order. (First Am. Compl., DE # 36-2, ¶ 27.) The Army argues that plaintiff has not pled any facts to suggest he was employed by SSI or the Army, or an applicant for employment with either entity, at that time. (Reply, DE # 40, at 6-7.) The court disagrees.

Plaintiff not only explicitly alleges he was employed by several staffing firms from 2011 to 2014, (First Am. Compl., DE # 36-2, ¶ 8), but also, he alleges that in mid-May 2014, he submitted a resume to SSI (at its request), which "then began the process of placing [him] on its roster of SWCS instructors," (id. ¶ 29). Reading these allegations with the allegations recounted above regarding joint employment, the court concludes plaintiff has sufficiently alleged he was an applicant for employment with the Army.

Third, the Army contends plaintiff "does not describe any adverse employment action in his pleading." (Mem., DE # 24, at 13.)

> To establish a discrimination claim under Title VII, a plaintiff must eventually put forth a prima facie case of discrimination by establishing that (1) he is a member of a protected class; (2) he suffered an adverse action; (3) his job performance was satisfactory; and (4) the adverse action occurred "under circumstances giving rise to an inference of unlawful discrimination." [2]

Tutt v. Wormuth, No. 19-2480, 2021 WL 4076729, at *1 (4th Cir. Sept. 8, 2021) (quoting Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011)) (per curiam); see also Baqir v. Principi, 434 F.3d 733, 742 (4th Cir. 2006) (recognizing that the same standards for a private sector employee's discrimination claim under Title VII apply to a federal

---

[2] "[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citations, internal quotation marks, and alteration omitted).

7

employee's discrimination claim). "For the purposes of a Title VII discrimination claim, an 'adverse employment action' is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Maine v. Azar, Civ. No. GLR-16-3788, 2021 WL 3617215, at *13 (D. Md. Aug. 16, 2021) (quoting Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011)).

Once MLS's task order ended, plaintiff submitted, as requested, his resume to the staffing firm who won the next task order for teaching at SWCS, SSI. (First Am. Compl., DE # 36-2, ¶¶ 27, 29.) Shortly thereafter, SSI supervisors discussed that plaintiff had been banned from Fort Bragg based on an incident with Dr. Nabipour and the Army did not want him on site. (Id. ¶ 30.) One can reasonably infer from plaintiff's allegations that the Army failed to rehire him in 2014 under SSI's task order as a language instructor, as it had previously done under task orders with other staffing firms. Such action is an adverse employment action. See Templeton v. First Tenn. Bank, N.A., Civ. No. WDQ-09-3280, 2013 WL 3873180, at *9 (D. Md. July 24, 2013) ("And, there can be no question that First Tennessee's July 2008 decision not to rehire Templeton was 'adverse action.'" (citing Price v. Thompson, 380 F.3d 209 (4th Cir. 2004)).

Fourth, the Army argues that plaintiff had not pled any facts to infer discriminatory animus on the basis of religion or national origin. (Mem., DE # 24, at 15-16.) Plaintiff is an Egyptian Coptic Christian. (First. Am. Compl., DE # 36-2, ¶ 6.) Dr. Nabipour is Iranian. (Id. ¶ 7.) Plaintiff and another instructor, who also is Egyptian Coptic Christian, Thomas Erian, drove to work together one day and parked next to Dr. Nabipour. (Id. ¶¶ 10, 15.) Dr. Nabipour gave them "a disapproving look." (Id.) The following day, while plaintiff was on break, Dr.

8

Nabipour entered plaintiff's classroom unannounced and solicited the student's opinions regarding plaintiff's job performance. (Id. ¶ 16.) Plaintiff heard that Dr. Nabipour complained plaintiff was teaching without a lesson plan (which plaintiff denies). (Id. ¶ 17.) Plaintiff's supervisor "reprimanded him about [Dr.] Nabipour's allegations" and threatened to fire plaintiff if he had any more complaints from Dr. Nabipour. (Id. ¶ 19.) Plaintiff then emailed a director for SWCS "to complain about [Dr.] Nabipour's treatment of him," (id. ¶ 21):

> I find it necessary to mention that the man I ride to work with and a very good friend, Thomas Erian, has discrimination law suit out against Mr. Nabipour. On my very first day Mr. Nabipour watched me come to work with Thomas Erian and I'm sure this is where the trouble began, or I am being discriminated against because I'm Coptic Christian or both??

(Id. ¶ 22.) The director forwarded the email to Dr. Nabipour for a response. (Id. ¶ 23.) SSI later learned plaintiff had been banned from Fort Bragg due to Dr. Nabipour, (see id. ¶ 30), and "'the usual attitude of segregation religiously,'" (id. ¶ 31). The events at issue occurred over about one and one-half months.

> According to plaintiff:
>
> It is simple to infer the religion and often the national origin of Arabic language instructors at SWCS based solely on their names. Both "Thomas" and "Escander" are identifiably Christian names. Moreover, Coptic Christian instructors are almost universally of Egyptian origin. Therefore, anyone working at SWCS would immediately understand that Thomas Erian and Tamer Escander were Coptic Christians from Egypt as soon as they heard their names.

(Id. ¶ 33.)

Construing these allegations in light most favorable to plaintiff, the inference of unlawful discrimination is not particularly strong. Nonetheless, the court concludes plaintiff's allegations are enough to survive a motion to dismiss.

Lastly, the Army contends plaintiff has failed to sufficiently allege a retaliation claim.

9

(Mem., DE # 24, at 16-19.)   Title VII "expressly prohibits retaliation by an employer against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'"   Netter v. Barnes, 908 F.3d 932, 937 (4th Cir. 2018) (quoting 42 U.S.C. § 2000e–3(a)).   This antiretaliation provision applies equally to federal employees.   See Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011).

"A prima facie case of retaliation requires proof that: (1) the plaintiff engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action."   Ray v. Int'l Paper Co., 909 F.3d 661, 669 (4th Cir. 2018) (citation omitted).   Specifically, the Army argues that plaintiff has not sufficiently pled protected activity or any adverse action.

> Protected activities fall into two distinct categories: participation or opposition. An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace.
> Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII. Participatory activities are vigorously protected to ensure employees' continuing access to the EEOC and the enforcement process.

Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) (citations omitted).

Oppositional activity "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities."   Id.   "[A]n employee is protected when []he opposes not only . . . employment actions actually unlawful under Title VII but also employment actions he reasonably believes to be unlawful."   Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 282

10

(4th Cir. 2015) (citation, internal quotation marks, and alteration omitted).

> An adverse employment action is one that "well might have dissuaded a reasonable worker" from engaging in protected conduct. This standard for establishing an adverse employment action under Title VII's antiretaliation provision is more expansive than the standard for demonstrating a tangible employment action under the statute's antidiscrimination provisions. . . . [A]lthough an adverse action need not "affect the terms and conditions of employment," there must be "some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it."

Ray, 909 F.3d at 670 (citations omitted).

Here, plaintiff vaguely alleges he "provided support for" Erian's EEO complaint which alleges religious and national origin discrimination and retaliation. (First Am. Compl., DE # 36-2, ¶¶ 11, 13.) Without further elaboration, the court cannot conclude whether such "support," if true, would constitute participation. However, as recognized previously, plaintiff complained to a director with SWCS about Dr. Nabipour's conduct, specifically mentioning his friendship with Erian and Erian's discrimination complaint and questioning whether he (plaintiff) was being discriminated against. (Id. ¶ 22.) Plaintiff has sufficiently alleged that he engaged in the protected activity of opposition.

Plaintiff further alleges that after the director forwarded his email to Dr. Nabipour, Dr. Nabipour attributed plaintiff's comments to Erian. (See id. ¶ 25.) As previously discussed, plaintiff allegedly suffered an adverse employment action when the Army failed to rehire him under SSI's task order, and the relevant events occurred within one and one-half months of each other. Plaintiff has sufficiently alleged a retaliation claim.

### III. CONCLUSION

Plaintiff's motion to amend is ALLOWED. The Clerk shall file plaintiff's proposed first amended complaint, (DE # 36-2), as plaintiff's amended complaint. The Army's motion to

11

dismiss is DENIED.

This 23 September 2021.

_____
W. Earl Britt
Senior U.S. District Judge