IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-589-BO

| | | |
|---|---|---|
| TAMER ESCANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| CHRISTINE WORMUTH, SECRETARY, | ) | |
| U.S. DEPARTMENT OF THE ARMY, | ) | |
| | ) | |
| Defendant. | ) | |

This cause comes before the Court on defendant's motion for summary judgment and motion to strike. Plaintiff has responded, defendant has replied, and in this posture the matters are ripe for ruling. For the reasons that follow, defendant's motion for summary judgment is granted and motion to strike is denied.

BACKGROUND

Plaintiff initiated this action by filing a complaint in the United States District Court for the District of Columbia. Plaintiff's complaint was subsequently transferred to this district. Defendant moved to dismiss plaintiff's complaint and plaintiff sought leave to amend. The motion to dismiss was denied and plaintiff was granted permission to file an amended complaint. A period for discovery commenced thereafter. Prior to the close of discovery, plaintiff sought an extension of the discovery period. Plaintiff's request, which was opposed by defendant, was denied. The instant motions followed.

Plaintiff's amended complaint alleges three claims of employment discrimination in violation of Title VII of the Civil Rights of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*. His

claims arise from his employment as an Arabic language instructor within the Department of Central Asian and Middle Eastern Languages at the U.S. Army John F. Kennedy Special Warfare Center and School (SWCS), Fort Bragg, North Carolina. Plaintiff's national origin is Egyptian, and his religion is Coptic Christian. Plaintiff alleges that he was subjected to religious discrimination and national origin discrimination as well as reprisal for having engaged in protected activity by "serving as a witness to support [a colleague] in his EEO and security clearance matters." [DE 43 ¶ 63].

Defendant (hereinafter "the Secretary" or "defendant") has moved for summary judgment pursuant to Fed. R. Civ. P. 56 in her favor on each of plaintiff's claims. She has also moved to strike certain documents attached to plaintiff's response in opposition to the motion for summary judgment.

## DISCUSSION

I. Motion to Strike.

The Secretary seeks to exclude from the evidence [DE 70-6 through 70-10] which plaintiff first produced in support of his opposition to her motion for summary judgment and which he failed to disclose as required by Fed. R. Civ. P. 26(a)(1) and 26(e). Four of the exhibits were a part of plaintiff's EEO proceedings against his employer, MultiLingual Solutions, not the Army. The fifth is an email that has been in plaintiff's possession but was not disclosed.

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (3), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial[.]" Fed. R. Civ. P. 37(c)(1). The prohibition does not apply if the failure to disclose the information or witness was "substantially justified or . . . harmless." *Id.* When deciding a request to exclude under Rule

2

Case 5:20-cv-00589-BO   Document 82   Filed 06/07/23   Page 2 of 15

37, a court considers "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

Plaintiff's failure to produce or describe the documents related to his EEO proceeding against his former employer MultiLingual Solutions was not substantially justified. Plaintiff's description in his initial disclosures concerning his "EEO complaint" and "[d]ocuments and filings generated during the processing of [plaintiff's] EEO complaint and all EEOC proceedings related thereto" on its face relates to his EEO proceedings against the Army, not his EEO proceedings against MultiLingual Solutions. Plaintiff's explanation for failing to disclose these documents as well as an email in plaintiff's possession during discovery is further insufficient. However, the Court finds the failure to ultimately be harmless because, as defendant argues, the documents either do not advance plaintiff's claims or they support the defendant's position. Accordingly, the Court will not strike the above-cited exhibits and will consider them in its analysis of defendant's motion for summary judgment.

II. Motion for Summary Judgment.

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

3

588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

The following facts are undisputed unless otherwise noted. The Department of Defense awarded a contract to four contractor staffing firms to provide foreign language, regional expertise, and culture instruction in support of the U.S. Special Operations Command (hereinafter "LREC program"). Per the agreement, [59-3] ("LREC contract"), a task order was to be issued for each class or group of classes. The government was required to evaluate the vendor's or contractor's performance under the contract and required the contractor to submit a program/plan for both pre-service and in-service professional development of its instructors. The vendors were to provide management of the LREC program, to include overall supervision and coordination of work required under the contract as well as recruiting, screening, and hiring of personnel. The agreement further required the vendors to supervise and evaluate all vendor personnel, including by observing and evaluating LREC instructors and managing teaching methodology. The government provided the materials, facilities, and equipment for performance of the contract. Instructor hours, including plaintiff's, were set by the contract. The LREC contract provided that the services provided by the

4

vendors were non-personal services and that no employer-employee relationship existed between the government and the vendor or its employees.

From 2011 to 2014, plaintiff worked as a contract Arabic instructor in the Center for Language and Culture (hereinafter "Language Center"), U.S. Army Special Operations Command Division, at the U.S. Army John F. Kennedy SWCS. He also worked one day as a substitute Arabic instructor in 2015. During the time period relevant to plaintiff's claims, Dr. Amir Nabipour was a department chairperson at the Language Center and was supervised by Terry Schnurr, a supervisory training instructor. Dr. Nabipour supervised ten civilian employees and did not supervise contract employees or control contractor employment status.

In 2014, plaintiff was hired by MultiLingual Solutions, Inc. to teach Arabic at the Language Center pursuant to MultiLingual Solution's contract with the Army. Plaintiff reported to the Language Center on March 10, 2014, for a teaching cycle that ended on July 7, 2014. David Putnam was the onsite program manager for MultiLingual Solutions and plaintiff's supervisor. Mr. Putnam approved plaintiff's leave requests and MultiLingual Solutions prepared his performance evaluations and determined his rate of pay and benefits. Army officials would periodically visit instruction areas to ensure that contractors like MultiLingual Solutions were performing adequately under the terms of their respective contracts. On March 11, 2014, Dr. Nabipour conducted a quality assurance observation of plaintiff's class. On March 27, 2014, and April 2, 2014, two other government observers conducted quality assurance observations of plaintiff's classes. These evaluations were provided to the contracting officer and his or her representative for overall quality assurance of government contracts.

In his amended complaint, plaintiff alleges that Dr. Nabipour, incorrectly, found that plaintiff had been teaching without a lesson plan and was otherwise not meeting all required

5

standards. Plaintiff alleges that his supervisor, Mr. Putnam, confronted plaintiff in class on April 2, 2014, and informed plaintiff that he would be fired if Dr. Nabipour complained about plaintiff one more time. Dr. Nabipour's evaluation reveals that he did not find plaintiff to have been teaching without a lesson plan and noted that Dr. Nabipour "enjoyed observing [plaintiff's] class" and that the "[s]tudents as well as teacher were motivated and very active in the classroom". [DE 59-16 p. 23].

Terry Schnurr, Dr. Nabipour's supervisor, has declared that plaintiff was not suspended or prohibited from working as a teacher at the Language Center. Schnurr further testified that at the conclusion of MultiLingual Service's contract, four companies bid for the next task order, and it was awarded to a different company. The language class for which the teaching cycle began on July 21, 2014, was managed by Mid Atlantic Professions, Inc., d/b/a SSI. Jacqueline Whitehead was the instructional supervisor and methodology trainer for SSI at the Language Center.

Plaintiff alleges that, after submitting his resume to SSI for the upcoming class cycle, he was informed that he had been "banned" from Fort Bragg at Dr. Nabipour's direction. Specifically, plaintiff alleges that in July 2014, an SSI employee, Morkos Saad, was teaching Arabic at the Language Center and asked if plaintiff could substitute for him while he was on vacation. Plaintiff alleges that Saad was told by SSI that plaintiff could not substitute teach because he had been suspended from Fort Bragg by the Army. Plaintiff alleges that this was due to his religion and nationality, and that Fort Bragg and supervisors like Dr. Nabipour preferred Muslim Arabic instructors over Coptic Christian Arabic instructors like plaintiff.

Plaintiff also alleges that his friend, Thomas Erian, who is also Egyptian and a Coptic Christian, had a prior EEO complaint against Dr. Nabipour. Plaintiff alleges that Dr. Nabipour was aware that plaintiff had assisted Mr. Erian with his EEO complaint and that he was retaliated

6

against by Dr. Nabipour for serving as a witness in support of Mr. Erian's complaint. Plaintiff further alleges that in October 2013 he wrote a declaration in support of Mr. Erian's appeal of the revocation of his security clearance.

The parties disagree as to when plaintiff first attempted to contact the Equal Employment Opportunity (EEO) office. Plaintiff contends that he first attempted to contact the EEO on Fort Bragg during approximately the second week of July 2014, but was told that he could not file a complaint against the Army because he was a contractor and not a civilian employee. Plaintiff further contends he contacted the Raleigh, North Carolina EEO Field Office on September 11, 2014. The parties agree that a plaintiff made contact with an EEO counselor in October 2014. On December 1, 2014, plaintiff filed a formal EEO complaint after informal counseling did not resolve the matter. That complaint was dismissed on a finding that plaintiff was not an Army employee. Plaintiff appealed, and the Equal Employment Opportunity Commission (EEOC) Office of Federal Operations reversed that decision and remanded for further investigation, specifically finding that the "record contains insufficient information to allow a determination on whether the [Army] jointly employed [plaintiff], or whether he was an applicant for joint employment." [DE 59-11 p. 4].

Plaintiff's charge of discrimination was again dismissed on a finding that he was not an employee of the Army. Plaintiff again appealed, and the decision was again remanded for further investigation after the Office of Federal Operations determined that the weight of the record showed that the Army had the right to control the means and manner of plaintiff's work sufficiently to support a finding that it was a joint employer. The Army then investigated the merits of plaintiff's claims and on September 19, 2019, issued a final decision finding that plaintiff was not subject to discrimination.

7

The Secretary now seeks summary judgment in her favor on three grounds. First, she contends that plaintiff failed to timely exhaust his administrative remedy. Second, she contends that the Army was not plaintiff's joint employer. Third, she contends that plaintiff cannot establish a prima facie case of discrimination or retaliation. The Court addresses the first and third argument only as its findings as to both are dispositive.

A. Plaintiff failed to timely exhaust his administrative remedy.

At the outset, the Court notes that determinations by the EEOC are not binding on this Court, which considers plaintiff's claim of discrimination and retaliation *de novo*. *Georator Corp. v. EEOC*, 592 F.2d 765, 767 (4th Cir. 1979).

In order to file a Title VII claim of discrimination against the federal government, a plaintiff must first exhaust his administrative remedy. *See* 29 C.F.R. § 1614.105. In cases such as this, the plaintiff must contact an Equal Employment Opportunity Counselor to report discrimination within 45 days of the alleged action in order to initiate the administrative exhaustion process. *See* 29 C.F.R. § 1614.105(a)(1); *Kobraei v. Alexander*, 521 Fed. Appx. 117, 118 (4th Cir. 2013); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509, 513 (4th Cir. 2005). Claims about conduct that was not reported to an EEO Counselor within 45 days will be considered not exhausted. *Murphy v. West*, 172 F.3d 863, 1999 WL 64284 at *3 (4th Cir. 1999).

Plaintiff alleges that he attempted to request EEO counseling at Fort Bragg in July 2014 but was told he could not do so because he was not a federal employee and has proffered his own testimony in support of this claim. Defendant has proffered the declaration of the Fort Bragg EEO director that which states that had plaintiff attempted to request EEO counseling in July 2014 there would have been a record made of that encounter, and no such record exists. [DE 60].

8

To "'initiate contact' an employee must (1) contact an agency official logically connected with the EEO process, even if that official is not an EEO counselor; (2) exhibit an intent to begin the EEO process; and (3) allege that an incident in question is based on discrimination". *Pueschel v. Veneman*, 185 F. Supp. 2d 566, 569 (D. Md. 2002) (citation omitted). There is a record of plaintiff's contact with the Raleigh EEOC office on August 6, 2014, which indicates that he received pre-charge counseling and voluntarily elected not to file an EEO charge. [DE 70-6]. Plaintiff again contacted the EEOC on September 11, 2014, more than sixty days after he alleges he learned he had been "banned" from teaching at Fort Bragg and exhibited an intent to begin the EEO process by filing a charge. [DE 70-7]. Although plaintiff has declared that he does not know why it was recorded that he did not exhibit an intent to file a charge of discrimination following his August visit to the EEOC, the record nonetheless does not reflect any charge having been filed on that date, against either the Army or MultiLingual Solutions. Accordingly, the Court finds that plaintiff failed to timely exhaust his claims.

The Court further determines that equitable tolling is not applicable. "To invoke equitable tolling, the plaintiff must . . . show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987). Any reliance on the alleged refusal to process plaintiff's claim by the Fort Bragg EEO office is undermined by the fact that just a few weeks later plaintiff visited the Raleigh EEOC office, where the record reflects that he received counseling but elected not to file a charge of discrimination. Accordingly, the Court declines to equitably toll the 45-day time period. Because plaintiff failed to timely exhaust his claims, the Secretary is entitled to summary judgment in her favor.

B. The Secretary is entitled to summary judgment on plaintiff's Title VII claims.

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion ... or national origin." 42 U.S.C. § 2000e-2(a)(1). "An unlawful employment practice is established when the complaining party demonstrates that ... religion, ... or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* at § 2000e-2(m). To prove employment discrimination, a plaintiff must demonstrate that his employer took adverse employment action against him because of his protected status. *See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). "An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (cleaned up). A plaintiff must show that "that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives[.]" *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013).

"Generally speaking, a plaintiff may avert summary judgment and establish a claim for intentional ... discrimination through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004). The briefing addresses only one avenue, the pretext framework, and the Court limits its consideration accordingly. Under the pretext framework, the plaintiff must first establish a *prima facie* case of discrimination, after which the burden shifts to the defendant to show a non-discriminatory basis for the adverse employment decision. The burden then shifts back to the plaintiff to demonstrate that defendant's "proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)).

"To establish a prima face case of failure to rehire, plaintiff must show "(1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Davis v. Lewis*, 376 F. Supp. 3d 629, 644 (E.D.N.C. 2019) (quoting *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998)). "The central focus of the inquiry in [Title VII cases] is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1973)).

Plaintiff's national origin and religious discrimination claims fail because he has not proffered sufficient evidence at this stage which would show that he suffered an adverse employment action or that he was rejected for a position under circumstances giving rise to an inference of discrimination. It is undisputed that plaintiff was not terminated from his position prior to the end of the MultiLingual Services contract. It is also undisputed that plaintiff received no written reprimand or notice from the Army that he could not be re-hired by any of the vendors selected to provide language teachers under the LREC contract. Nor does the evidence contain a written rejection of plaintiff's application for employment by any vendor after he attempted to gain re-hire following the close of the MultiLingual Services contract.

Plaintiff's best evidence on this issue is the testimony of Ms. Whitehead, who worked for SSI. *See* [DE 59-1]. Ms. Whitehead has testified that she was told by her supervisor, Natalia Vines, that plaintiff had been "banned from post." [DE 59-1 p. 90]. Ms. Whitehead testified that she had specifically been told by Ms. Vines that plaintiff was "a moron" who had "gotten into it with Dr. Nabipour." *Id.* p. 86. Ms. Whitehead further testified that she was never told by Dr. Nabipour that plaintiff was not to be re-hired nor did she talk to Dr. Nabipour, Mr. Putnam, or anyone else at the

11

Language Center or in the Army about plaintiff. *Id.* pp. 91-93. Natalia Vines has not provided any testimony, either in the EEOC record or during discovery in this case. *See also Lyons v. City of Alexandria*, 35 F.4th 285, 290 n. 4 (4th Cir. 2022) (hearsay evidence cannot be considered on motion for summary judgment).

Even if the absence of a formal rejection from employment is not, in and of itself, fatal to plaintiff's claims, the undisputed record also shows that plaintiff *was* re-hired to teach at the Language Center following the end of the MultiLingual Services contract, albeit for one day as a substitute teacher for Global Technology Solutions. Plaintiff's testimony that he did not receive an email back from MultiLingual Solutions after he sent them his resume and that he was not offered further employment by Global Technology Solutions because Dr. Nabipour had "blacklisted" plaintiff from working on any site at Fort Bragg is, at best, mere speculation. *See* [DE 59-1] pp. 54-55.

Moreover, even construing Ms. Whitehead's testimony in the light most favorable to plaintiff, she did not testify that she had been told that plaintiff was "banned from post" by Dr. Nabipour due to his religion or national origin. Rather, Ms. Whitehead expressly denied knowing why plaintiff had been "banned." Though Ms. Whitehead did testify about "the usual attitude of segregation religiously", *id.* p. 87, she also testified that she never saw plaintiff being inappropriately treated or discriminated against by Dr. Nabipour or anyone else. *Id.* p. 89. Plaintiff was hired by a subsequent vendor, Global Technology Solutions, and though he relies on an email to another vendor from which he sought employment as a language instructor, the Buffalo Group, in September 2014, there is no evidence which suggests why he was allegedly not hired by the Buffalo Group. Instead, plaintiff relies only on upon his speculation that the Buffalo Group did not hire him because of the actions of Dr. Nabipour. In sum, plaintiff's speculative testimony about

12

the actions and motivations of Dr. Nabipour coupled with the second-hand statement that he had been banned because his "is a moron" and "got into it" with Dr. Nabipour is simply insufficient to create a genuine issue of material fact for trial on his national origin and religious discrimination claims. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) ("Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.").

For his retaliation claim, plaintiff must show that he engaged in protected activity, that his employer took adverse action against him, and that there is a causal relationship between his protected activity and the adverse action. *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015). The burden then shifts to the employer to show that the adverse action was based upon a legitimate, non-retaliatory reason, after which the plaintiff must show that the employer's legitimate reason is actually pretext. *Id.* "[R]etaliatory actions need not affect the terms and conditions of employment to come within Title VII's prohibition. However, retaliatory actions do have to be materially adverse—such that they might have dissuaded a reasonable worker from engaging in protected activity." *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018) (cleaned up).

As it relates to his retaliation claim, plaintiff has further failed to create a genuine issue of material fact for trial. In his amended complaint, plaintiff alleges that Dr. Nabipour and/or other SWCS employees took adverse actions against him in retaliation for his "protected activity of serving as a witness to support Erian in his EEO and security clearance matters." [DE 43 ¶ 63].[1]

---

[1] In opposition to the motion to dismiss, plaintiff contends that he also may have been retaliated against by Dr. Nabipour for sending an email to Lieutenant Colonel Simpson in April 2014. Plaintiff may not, at this stage, amend his retaliation claim to assert a new basis for retaliation.

13

Dr. Nabipour has testified that he was unaware that plaintiff helped Mr. Erian with his EEO complaint. [DE 59-1 p. 63]. "[T]he employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Plaintiff has proffered no evidence which would support a finding that Dr. Nabipour was, in fact, aware of plaintiff's assisting Mr. Erian with his EEO complaint or any security clearance matters. His testimony that Dr. Nabipour saw plaintiff and Mr. Erian in the parking lot together, supporting an inference that they were friends and plaintiff was helping Mr. Erian with his EEO complaint, is simply too speculative to rebut Dr. Nabipour's testimony. Plaintiff has identified no other SWCS employee who knew about his support of Mr. Erian's EEO complaint or security clearance matters who then prevented plaintiff from working as a language instructor.

More importantly, however, plaintiff has not proffered evidence which would create a genuine issue of material fact as to whether he suffered adverse action because of any alleged retaliation. As discussed above, the evidence contains no written reprimand or suspension from teaching at the Language Center issued by the Army, Dr. Nabipour, or any of the vendors that supplied language instructors. The failure to hire a candidate for a position for which he applied can be considered an adverse action for purposes of a retaliation claim. *See, e.g., Young v. N.C. Agric. & Tech. State Univ.*, No. 1:08CV894, 2011 U.S. Dist. LEXIS 16428, at *44 (M.D.N.C. Feb. 18, 2011). But plaintiff did, in fact, teach at the Language Center after Dr. Nabipour allegedly suspended him from teaching. And, as discussed above, plaintiff has not raised an issue of material fact as to whether any alleged failure to re-hire plaintiff by vendors that held the LREC contract after MultiLingual Solutions was attributable to Dr. Nabipour or any other Army employee. Summary judgment in the Secretary's favor is therefore appropriate as to this claim as well.

At bottom, plaintiff relies on "conclusory allegations, mere speculation, [and] the building of one inference upon another" to support his claims, which at this stage is insufficient. *Dash*, 731 F.3d at 311. Summary judgment in favor of the Secretary is therefore appropriate.

## CONCLUSION

Accordingly, for the foregoing reasons, defendant's motion for summary judgment [DE 56] is GRANTED and defendant's motion to strike [DE 75] is DENIED. The clerk is directed to enter judgment and close this case.

SO ORDERED, this ____ day of June 2023.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE